**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MAXEN CAPITAL, LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3590 |
| | § | |
| | § | |
| TIMOTHY SUTHERLAND, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This dispute arises out of a Consulting Agreement between the plaintiff, MaxEn Capital,

LLC, and the defendant, PACE Global Energy Services, LLC, for PACE to provide consulting

services in furtherance of a potential electrical power development project in Antigua and Barbuda.

The plaintiffs in this suit are MaxEn and two individuals, William T. Baker and Robert L. Erwin.

The defendants are PACE and its Chief Executive Officer and Chairman, Timothy Sutherland.  The

plaintiffs filed this suit in Texas state court and the defendants removed on the basis of diversity.

The Consulting Agreement contained a forum selection clause  providing that litigation "related to

this Agreement must be brought <u>only</u> in an appropriate federal or state court sitting in the

Commonwealth of Virginia," that the parties "specifically consent to the personal jurisdiction of the

federal or state courts sitting in the Commonwealth of Virginia with regard to any such action," and

that the parties "specifically agree that the sole appropriate venue for any such lawsuit is in the

federal or state courts sitting in the Commonwealth of Virginia."  (Docket Entry No. 4, Ex. 1 ¶ 4(I)

(emphasis in original)).

The defendants have moved to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure, asserting that venue in Texas is improper. (Docket Entry No. 4). The plaintiffs have responded, (Docket Entry No. 8), and have filed an amended complaint, (Docket Entry No. 12). The defendants have replied. (Docket Entry No. 14).

Based on the motion and response, the pleadings, the record, the applicable law, and the arguments of counsel, this court grants the motion to dismiss for improper venue and does not decide the alternatively asserted motion to dismiss under Rule 12(b)(6). The reasons for this ruling are stated below.

## I.     Background

MaxEn, a Texas corporation located in Houston, Texas, is "in the business of providing project development, feasibility, and financing services to domestic and international private and public clients in the energy, power infrastructure, real estate, industrial and security industries." (Docket Entry No. 8 at 1). Baker is a Florida resident and Erwin is a Texas resident. PACE, an energy consulting and management firm, is a Virginia company and its CEO, Sutherland, is a Virginia resident. In the first amended complaint, the plaintiffs allege that in 2006, MaxEn was "investigating a potential power development project in the country of Antigua and Barbuda that became known as the 'Antigua Repowering Project.'" (Docket Entry No. 12 ¶ 1). The plaintiffs allege that Erwin and Baker negotiated this project with the Antiguan government, "individually and on behalf of MaxEn." (*Id.* ¶ 2). On May 22, 2006, PACE submitted a proposal to MaxEn to provide services in furtherance of the Antigua Repowering Project, in two phases. Phase 1 was a consulting and feasibility phase. Phase 2 would begin only if the Project was "deemed feasible" with the

"potential to provide attractive economic returns."   Phase 2 contemplated a developmental partnership between MaxEn and PACE.  (Docket Entry No. 4, Ex. B).

On May 25, 2006, MaxEn and PACE executed a Consulting Agreement.  A copy of that Agreement is attached to the defendants' motion to dismiss for improper venue.  (*Id*., Ex. A).  This Agreement called for PACE to conduct "market and technology assessments, due diligence, financial feasibility and/or project development support for repowering or greenfield energy projects."  (*Id*., Ex. A ¶ 1.B).  PACE was to be paid hourly.  The Agreement stated that it did not "obligate the Parties to enter into any other agreement or endeavor related to the Project."  (*Id*., Ex. A ¶ 4(N)).  The defendants assert that this Agreement "contains the negotiated terms relating to Phase 1 of the Proposal.  (*Id.* at 3).  The Agreement contained the following forum selection provision:

> I. Governing Law; Venue.  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia (except those laws which would require the application of the laws of any other state).  Any lawsuit, claim, dispute or other action related to this Agreement must be brought only in an appropriate federal or state court sitting in the Commonwealth of Virginia.  The Parties specifically consent to the personal jurisdiction of the federal or state courts sitting in the Commonwealth of Virginia with regard to any such action and they specifically agree that the sole appropriate venue for any such lawsuit is in the federal or state courts sitting in the Commonwealth of Virginia.

(*Id.*, Ex. A ¶ 4(I)).

The plaintiffs allege that shortly after the Consulting Agreement was executed, the parties agreed to form "a joint venture company to develop the Antigua Repowering Project and other similar Caribbean ventures."  (Docket Entry No. 8 at 1).  This alleged joint venture was named

Global Alternative Energy, LLC ("GAE").  (*Id.*).  The plaintiffs acknowledge that there was no written joint venture agreement.

The plaintiffs allege that PACE did not complete the feasibility assessment report that was expected by the Antiguan government in August 2006, as required under the Consulting Agreement. (Docket Entry No. 12 ¶ 6).  The plaintiffs allege that when the report was produced in early November 2006, it contained "numerous inaccuracies, inadequate work and unreliable research." (*Id.* ¶ 7).  The plaintiffs allege that as a result of the inadequate and untimely feasibility study report, Antigua terminated the Antigua Repowering Project.  (*Id.*).  The plaintiffs allege that the defendants never "intended on furthering the activities of GAE."  (*Id.* ¶ 8).  In the amended complaint, the plaintiffs assert claims for breach of the Consulting Agreement and breach of an oral agreement to form a joint venture; fraud in the form of Sutherland's representations that the parties would form a joint venture and that PACE would accept alternative forms of compensation for its consulting services; tortious interference with an agreement in principle with the Antiguan government; conspiracy to induce the plaintiffs to form the joint venture when neither defendant intended to develop it; and negligence and gross negligence in failing to provide the professional services called for by the Consulting Agreement and in failing to develop the joint venture under the parties' alleged oral agreement to do so.  (*Id.* ¶¶ 16–27).  The plaintiffs allege that Baker and Erwin were not reimbursed for their travel and other expenses incurred in negotiating the Antigua Repowering Project that the Antiguan government cancelled, which the plaintiffs claim resulted from PACE's breach of the Consulting Agreement and negligent performance of duties under that Agreement. (*Id.* ¶ 2)

Before the plaintiffs filed this suit, PACE sued MaxEn in Virginia state court, alleging a failure to pay for the services provided under the Consulting Agreement. PACE obtained a judgment against MaxEn in the amount of $309,013.60. That was a collection suit filed after the plaintiffs refused to pay PACE for the services provided under the Consulting Agreement. PACE domesticated the judgment in Texas in July 2008. (Docket Entry No. 4 at 4). The plaintiffs filed this suit in Texas state court in December 2008. (Docket Entry No. 1).

## II.     The Legal Standard Under Rule 12(b)(3)

Once a defendant raises the issue of improper venue, the plaintiffs have the burden to prove that the chosen venue is proper. *Psarros v. Avior Shipping, Inc.,* 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.,* 240 F. App'x 612, 615 (5th Cir. 2007) (*citing Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1138 (9th Cir. 2004)). To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat a plaintiff's assertion of venue. *Id.* "When deciding a Rule 12(b)(3) motion to dismiss for lack of venue, the court may consider extrinsic evidence." *Smith v. U.S. Investigations Servs., Inc.,* No. Civ. 04-0711, 2004 WL 2663143, *1 n.1 (D.D.C. Nov. 18, 2004); *see also Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir. 1996); *Moore v. AT & T Latin America Corp.,* 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001); *ESI, Inc. v. Coastal Power Prod. Co.,* 995 F. Supp. 419, 422 (S.D.N.Y. 1998). Federal Rule of Civil Procedure 12(b)(3) allows a case to be dismissed for improper venue. FED. R. CIV. P. 12(b)(3); *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the

wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any

district or division in which it could have been brought.").

Federal law applies to the enforceability of forum selection clauses, whether jurisdiction be

based on diversity, federal question, or a combination of the two. *Haynsworth v. The Corp.,* 121

F.3d 956, 962 (5th Cir. 1997).

**III.     The Forum Selection Clause**

**A.     Is the Forum Selection Clause Mandatory?**

A forum-selection clause may be mandatory or permissive.  A clause is mandatory if the

language clearly demonstrates the "parties' intent to make [the forum] exclusive."  *City of New*

*Orleans v. Municipal Admin. Servs., Inc.,* 376 F.3d 501, 504 (5th Cir. 2004); *Kevlin Servs., Inc. v.*

*Lexington State Bank,* 46 F.3d 13, 14 (5th Cir. 1995) ("This contract shall be interpreted and

construed in accordance with the laws of the State of Texas.  The legal venue of this contract and

any disputes arising from it shall be settled in Dallas County, Texas.").  "Where the agreement

contains clear language showing that jurisdiction is appropriate only in a designated forum, the

clause is mandatory." *Von Graffenreid v. Craig,* 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003) (*citing*

*Excell, Inc. v. Sterling Boiler & Mech., Inc.,* 106 F.3d 318, 321 (10th Cir. 1997)); *see also*

*Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (9th Cir. 1989) ("The prevailing rule is clear

from these and other cases that where venue is specified with mandatory language[,] the clause will

be enforced.").  In *Docksider,* the Ninth Circuit distinguished its earlier decision in *Hunt* (in which

the court held the forum-selection clause was permissive) by explaining that the forum-selection

clause at issue specifically prescribed venue.  *Docksider, Ltd.,* 875 F.2d at 763–64.  The Ninth

Circuit explained that the clause required enforcement because the parties not only consented to

jurisdiction in Virginia, but agreed to mandatory venue in Virginia.   "This mandatory language makes clear that venue, the place of suit, lies exclusively in the designated county." *Id.* at 764.

Courts have held forum-selection provisions permissive when the language does not prescribe venue  or provide for exclusivity. *See, e.g., Mun. Admin. Servs., Inc.,* 376 F.3d at 504–05 ("The undersigned Contractor does further hereby consent and yield to the jurisdiction of the State Civil Courts of the Parish of Orleans . . . ."); *Caldas & Sons, Inc. v. Willingham,* 17 F.3d 123, 127–28 (5th Cir. 1994) ("The laws of the Courts of Zurich are applicable."); *Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 956 (5th Cir. 1974) ("This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York."); *K & V Scientific Co., Inc. v. Bayerische Moteren Werke Aktiengesellschaft,* 314 F.3d 494, 496, 500 (10th Cir. 2002) ("Jurisdiction for all and any disputes arising out of or in connection with this agreement is Munich.  All and any disputes arising out of or in connection with this agreement are subject to the laws of the Federal Republic of Germany.").

The forum selection clause in the Consulting Agreement states that claims relating to the Consulting Agreement "must be brought only in an appropriate federal or state court sitting in the Commonwealth of Virginia."  The parties agreed "that the sole appropriate venue for any such lawsuit is in the federal or state courts sitting in the Commonwealth of Virginia."  (Docket Entry No. 4, Ex. A ¶ 4(I)).  The words "only" and "sole" are a simple but clear limitation that not only permits Virginia to be a forum for the case, but requires it.  The clause is mandatory.

### B.    Are the Parties Subject to the Forum Selection Clause?

The plaintiffs acknowledge that MaxEn is a party to the Consulting Agreement containing the forum selection clause and is bound by that clause.  The plaintiffs argue that the forum selection

clause cannot be applied to Baker and Erwin, who were not parties to, and did not sign, the Consulting Agreement.  A forum selection clause in an agreement can be enforced as to a nonsignatory only if the nonsignatory is bound by that agreement under recognized contract or agency principles.  *Hellenic Inv. Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514–17 (5th Cir. 2006); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355–56 (5th Cir. 2003).  Those principles are incorporation by reference; assumption; agency; veil-piercing/alter ego; estoppel; and third-party beneficiary.  The defendants invoke direct-benefits estoppel as the basis for finding that the forum selection clause can be applied against Baker and Erwin.  Many of the direct-benefit estoppel cases involve a nonsignatory who sues under a contract containing an arbitration or forum selection clause while refusing to be bound by that clause.  For example, in *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, the court was asked to confirm an arbitration award in favor of Bridas against the Government of Turkmenistan arising out of a joint venture agreement that contained an arbitration clause.  The Government of Turkmenistan was not a signatory to the agreement.  The court declined to apply direct-benefits estoppel, noting that the nonsignatory had not sued the signatory under the joint venture agreement containing the arbitration clause and therefore had not "exploited" the agreement to "the degree that the cases that consider applying this version of estoppel require."  *Id.* at 362.

Other direct-benefit estoppel cases have not focused on whether the nonsignatory filed a suit or claim against the signatory based on the agreement containing the arbitration clause, but on whether the evidence showed that the nonsignatory received direct and substantial benefits from that agreement.  In *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187 (3d Cir. 2001), the court considered a joint venture agreement between DuPont

8

China and Rhodia Fiber, subsidiaries of DuPont and Rhodia respectively.  DuPont, the parent company of DuPont China, sued Rhodia Fiber and Rhodia for breach of an oral agreement, not for breach of the joint venture agreement.  The joint venture agreement contained an arbitration clause. The Third Circuit affirmed the district court's refusal to compel DuPont to arbitrate its claim against the signatories to the joint venture agreement.  *Id.* at 190–91.  The court held that direct-benefits estoppel did not apply because there was no evidence that DuPont had "embraced the Agreement itself during the lifetime of the Agreement, or that it received any direct benefit under the Agreement." *Id*. at 200.  The *DuPont* court did not limit direct-benefits estoppel to cases in which the nonsignatory had sued the signatory under the agreement containing the arbitration clause. *See also Hellenic*, 464 F.3d at 517–20 (5th Cir. 2006) (enforcing a forum-selection clause against a nonsignatory to the contract when the nonsignatory received direct and substantial benefits from the signatory's contract performance); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999) (enforcing a forum-selection clause against nonsignatory to the contract because the nonsignatory received direct and substantial benefits from the signatory's contract performance); *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 688 (7th Cir. 2005) (declining to enforce an arbitration agreement against a nonsignatory based on direct-benefits estoppel because the nonsignatory had not sought to enforce any rights under the agreements containing the arbitration clause and any benefits available under those agreements were too attenuated and indirect to force arbitration under an estoppel theory); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1063–64 (2d Cir. 1993) (a nonsignatory local affiliate sued for a declaratory judgment that it had a right to use a trade name; the authority to use the trade name was provided under an agreement containing an arbitration clause, which the court enforced against the

nonsignatory because it had benefitted from using the trade name); *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 372–73 (S.D. Tex. 2006) (direct benefits estoppel applied to compel arbitration against a nonsignatory that had not sued the signatory but had received significant and direct benefits under the agreement containing the arbitration clause).

In the present case, both grounds for applying direct benefits estoppel are present.  Baker and Erwin have sued MaxEn and Sutherland under the Consulting Agreement that contains the forum selection clause.  They cannot "exploit" that Agreement while refusing to be bound by provisions in it.  In addition, Baker and Erwin allege that they intended to use MaxEn's services under the Consulting Agreement to pursue the Antigua Repowering Project.  The forum selection clause can be enforced against not only MaxEn, but also Baker and Erwin.

## C.      Are the Claims Subject to the Forum Selection Clause?

It is clear that the claims for breach of the Consulting Agreement are within the scope of the forum selection clause.  The plaintiffs argue that their claims for breach of the oral agreement to form a joint venture, tortious interference, fraud, conspiracy, and negligence are outside the scope.

The scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it.  *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1361 (2d Cir. 1993).  Whether a forum selection clause encompasses other claims depends principally on how broadly the clauses are worded.  *See id.*  The forum selection clause in the Consulting Agreement is broadly written to encompass all claims "related" to the Agreement.  When such language is present, courts do not allow parties to avoid the clause by "artful pleading" of claims to avoid basing them on the contract containing the clause.  *Id.* at 1360 ("We refuse to allow a party's solemn promise to be defeated by artful pleading."); *Ginter ex rel. Ballard v. Benlcher, Predergast & LaPorte*, 536 F.3d 439, 442 (5th

Cir. 2008) (a forum selection clause in an attorney-client contract specifying that disputes "for the enforcement and/or breach of this contract" must be filed in Louisiana state court applied in the clients' malpractice suit against the attorney).

The courts have held that a contractually-based forum selection clause will also encompass tort claims if those claims ultimately depend on the existence of a contractual relationship between the parties, if resolving those claims relates to interpretation of the contract, or if those tort claims involve the same operative facts as a parallel claim for breach of contract. *See Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209 (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action. . . . '[W]here the relationship between the parties is contractual, the pleading of alternative noncontractual theories of liability should not prevent enforcement of such a bargain [as to the appropriate forum for litigation].'" (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 203 (3d Cir. 1983))).

The forum selection clause at issue here applies to "any lawsuit, claim, dispute or other action related to" the Consulting Agreement. Such clauses are broad, "encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to' . . . the contract." *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 389 (2d Cir. 2007). By contrast, clauses that cover disputes over the "implementation and interpretation of" or "arising from" an agreement are viewed as relatively narrow. *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 222–23 (5th Cir. 1998); *Psarros*, 192 F. Supp. 2d at 754 n.5. The forum selection clause in the Consulting Agreement is broad, covering claims "related to" the Agreement. Under the case law, all of the plaintiffs' claims are within the scope of the forum selection clause – not only the claim for breach

of the Consulting Agreement, but also the other breach of contract and tort claims pleaded in the amended complaint.

All of the plaintiffs' claims rely fundamentally on the terms of the Consulting Agreement and will require interpretation of its terms. The plaintiffs allege that PACE breached its Consulting Agreement with MaxEn and was negligent by providing a delayed and deficient project feasibility study. (Docket Entry No. 12, ¶¶ 6, 7, 18, 26). This study was required by the Consulting Agreement. The plaintiffs allege that the oral agreement to form a joint venture included an agreement that PACE would accept alternative forms of compensation for its work under the Consulting Agreement, citing language in the Consulting Agreement to support their claim. The plaintiffs allege that PACE would be compensated from the GAE's proceeds arising out of the Antigua Repowering Project, in place of the hourly rate that was in the Consulting Agreement. (*Id*. ¶ 5). The plaintiffs' claims of breach of the oral contact to form the joint venture and fraud will require interpreting the Consulting Agreement terms and are based on assertions as to the rights and obligations created in that Agreement. The plaintiffs' claim that the defendants engaged in a conspiracy and tortiously interfered with their relationship with the Antiguan government all relate to the claim that the defendants failed to perform the work required under the Consulting Agreement. Under the case law, the forum selection clause encompasses all the plaintiffs' claims because they depend on the existence of the contractual relationship between the parties. Resolving those claims will require interpreting the Consulting Agreement, and the tort claims involve the same operative facts as the breach of the Consulting Agreement claim. *See Hugel*, 999 F.2d at 208–09 (claim of tortious interference with a business relationship was encompassed by a forum selection clause applicable to "any dispute and/or controversy of whatsoever nature arising out of

or relating to the Member's membership of, and/or underwriting of insurance business at, Lloyd's");

*Kessmann & Assocs., Inc. v. Barton-Aschman Assocs., Inc.*, 10 F. Supp. 2d 682, 688 (S.D. Tex.

1997) ("Claims that arise out of the contractual relationship and implicate the agreement are subject

to the forum selection clause.").

The forum-selection clause is mandatory and applies to the subject matter of this suit.  The

remaining issue is whether it was procured by fraud and is unenforceable.

### D.      Is the Clause Enforceable?

Courts presumptively enforce forum-selection clauses, but the presumption of enforceability

may be overcome by a clear showing that the clause is "'unreasonable' under the circumstances."

*Int'l Software Sys., Inc. v. Amplicon,* 77 F.3d 112, 114 (5th Cir. 1996) (quoting *M/S Bremen v.*

*Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).  If the forum-selection clause was incorporated into

the agreement as a result of fraud, it may be found unreasonable. *Haynsworth,* 121 F.3d at 963.  The

party resisting enforcement on these grounds bears a "heavy burden of proof."  *Id.*  Fraud may

invalidate a forum-selection clause, but only if the inclusion of that clause, as opposed to the signing

of the entire contract, was the product of fraud.  *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519

(1974).  The mere allegation of fraudulent conduct does not suspend operation of a forum-selection

clause. Rather, the proper inquiry is whether the forum-selection clause is the result of fraud in the

inducement of the forum-selection clause itself.  *See Afram Carriers, Inc. v. Moeykens,* 145 F.3d

298, 302 n. 3 (5th Cir. 1998) (party claiming fraud must show that inclusion of forum-selection

clause itself, not the entire agreement, was a product of fraud).  There is no allegation of fraud

specific to the forum-selection clause in the plaintiffs' pleadings.  Allegations of fraud in the

inducement of the contract as a whole, not merely the forum-selection clause, do not suspend

operation of that clause. *Cf. Great Earth Cos., Inc. v. Simons,* 288 F.3d 878, 890 (6th Cir. 2002) (holding that there was "no question that Great Earth fraudulently induced the Simonses to agree to the arbitral forum selection clause . . . which provides that arbitration of disputes take place in New York" by knowingly misrepresenting in the Offering Circular that it would not seek arbitration outside of Michigan).

The record also defeats any argument that the forum-selection clause resulted from overreaching. "Overreaching is that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties." *Haynsworth,* 121 F.3d at 965 n.17 (citation omitted). The parties in this case were apparently sophisticated individuals and businesses. There is no allegation of any inability to negotiate freely. *See Int'l Software Sys.,* 77 F.3d at 116. The plaintiffs do not suggest that they would be unable to obtain relief in the courts of Virginia. Although litigating these claims in Virginia rather than Texas would certainly be more burdensome for at least two of the plaintiffs – MaxEn is a Texas company and Erwin is a Texas resident (Baker is a Florida resident), there is no basis to conclude that it would be so difficult as to deprive the plaintiffs of their day in court.

The forum-selection clause is enforceable.

**IV.     Conclusion**

The defendants' motion to dismiss under Rule 12(b)(3) is granted. Because the case is in the wrong venue, this court does not reach the motion to dismiss for failure to state a claim.

SIGNED on April 3, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

14